UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THE ADAM GROUP, INC. OF MIDDLE TENNESSEE, d/b/a PLAYMAKER CRM, <br><br>    Plaintiff, <br><br>v. <br><br>DANIEL CHRISTOPHER TUNNELL, KEAGAN BROWN, ANNIE TUNNELL McDANIEL, and KARL DUMAS, <br><br>    Defendants. | No. 3:13-00258 <br> Judge Sharp |

## MEMORANDUM

Pending before the Court in this Racketeer Influenced and Corrupt Organization (RICO) case is a Motion to Dismiss (Docket No. 9) filed by Defendants Daniel Christopher Tunnell, Keagan Brown, Annie Tunnell McDaniel, and Karl Dumas. Defendants seek dismissal on two grounds. First, they argue that the present RICO claims arise out of the same transactions or occurrences as those in an action styled Homecare CRM, LLC., v. The Adam Group, Inc. d/b/a PlayMaker, Civil Action No. 1:12-cv-0958-TCB, pending before District Judge Timothy C. Batten in the United States District Court for the Northern District of Georgia ("the Atlanta action"), and hence were compulsory counterclaims in that action under Rule 13(a) of the Federal Rules of Civil Procedure. Second, they argue the Complaint fails to make a proper distinction between the RICO "persons" against whom the claims are made and the RICO "enterprise."

The Motion to Dismiss has been fully briefed by the parties, and the Court heard oral argument on May 9, 2014. For the reasons that follow, the Court will deny the Motion.

## I. BACKGROUND

1

On June 6, 2012, Homecare CRM, LLC ("HCRM") filed the Atlanta action against The Adams Group, Inc. of Middle Tennessee, d/b/a Playmaker CRM ("PlayMaker"), alleging that PlayMaker wrongfully used HCRM's "Homecare CRM" trademarks in a manner likely to confuse and deceive customers into believing that PlayMaker and its software solutions originated from or were associated or affiliated with or sponsored or approved by HCRM. In broad terms, the Complaint alleges PlayMaker: (a) used the Homecare CRM and Homecare CRM marks in its promotional materials beginning in 2010; (b) purchased the Homecare CRM and HomecareCRM marks from Google to trigger links to PlayMaker's website, constituting unfair competition; and (c) wrongfully misappropriated HCRM's proprietary software. HCRM's Complaint sets forth causes of action for trademark infringement and false designation of origin; misappropriation of trade secrets; false advertising; common law unfair competition; unjust enrichment; and violations of the Georgia Deceptive Trade Practices Act and the Tennessee Consumer Protection Act.

On June 28, 2012, PlayMaker, the Plaintiff in this action, filed its Answer in the Atlanta action. It also filed Counterclaims[1] against HCRM, Contactivation, and Tunnell for libel, slander, false advertising, tortious interference with business relations, common law unfair competition, and violation of the Georgia Deceptive Trade Practices Act. PlayMaker sought a declaratory judgment of non-infringement, compensatory damages, punitive damages, and attorney's fees. The counterclaims were thereafter twice-amended, most recently on January 16, 2013, to add factual allegations and to add as Defendants Brown and McDaniel, who are also Defendants in this action.

With regard to the counterclaims as they presently exist in the Atlanta action, Playmaker

---

[1] PlayMaker contends that the "Counterclaims" were titled as such in keeping with the local practice. In reality, the pleading is a third-party complaint because it was not against parties already named in the Atlanta action.

contends that in late 2012 it discovered Defendant McDaniel had "tricked" a PlayMaker customer into providing HCRM with unauthorized access to PlayMaker's proprietary flagship software product, "PlayMaker CRM," and that HCRM then proceeded to document every aspect of that product. This allegedly wrongfully obtained proprietary information was then used by Defendants Tunnell, Brown, McDaniel and Dumas to reverse engineer PlayMaker's software and to unfairly compete against PlayMaker in the marketplace. The amended counterclaims contain all the causes of action in the original counterclaims, as well as various causes of action for misappropriation of trade secrets, computer fraud, and cyber torts. In their answer to the counterclaims, Defendants Brown and McDaniel have asserted that the United States District Court for the Northern District of Georgia lacks jurisdiction over them.

Many of the factual allegations in the Complaint filed in this case are similar, if not identical, to allegations contained in the counterclaims in the Atlanta action. PlayMaker does not argue otherwise, but points out that there are additional allegations in this action not found in the Atlanta action. In this regard, PlayMaker claims that after filing its amended counterclaims, it learned of additional misconduct by Defendants, including alleged attempts by Defendants Dumas and Tunnel to tamper with a witness in the Atlanta action, and an attempt by Dumas to induce a third party to destroy documents relevant to that litigation.

## II. **DISCUSSION**

As noted Defendants move to dismiss on two grounds, one of which is that the claims raised here should have been raised in the Atlanta action as a compulsory counterclaim pursuant to Rule 13(a), and the other of which is that a proper distinction of "persons" and "enterprise" for purposes of RICO has not been pled. The Court considers those issues in turn.

**A. Compulsory Counterclaim and Rule 13(a)**

With exceptions not relevant here, Rule 13 of the Federal Rules of Civil Procedure provides:

(a) Compulsory Counterclaim.

> (1) In General. A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim:
>
>> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>>
>> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a). Rule 13(a)'s language is mandatory in that "a responsive pleading 'must' assert a compulsory counterclaim; a compulsory counterclaim that 'is not brought is thereafter barred.'" Tyler v. DH Capital Mgmt., Inc., 736 F.3d 455, 459 (6th Cir. 2013) (quoting Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n.1 (1974)). "Rule 13 serves the purpose of bringing all relevant claims before the court in a single action, . . . but is not a tool for plaintiffs to force defendants' counterclaims into court prematurely." Id. (citations omitted).

The Sixth Circuit applies a "'logical relationship test in determining whether a claim is a compulsory counterclaim; under that test, the court 'determine[s] whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims.'" Cent. W. Va. Energy Co. v. Wheeling-Pittsburgh Steel Corp. 245 F. App'x 415, 424 (6th Cir. 2007) (quoting Sanders v. First Nat'l Bank & Trust Co., 936 F.2d 273, 277 (6th Cir. 1991)). The term "transaction" is interpreted liberally, which is to say that "a transaction 'may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.'" In re Gordon Sel-Way, Inc., 270 F.3d 280, 287 (6th

Cir. 2001) (quoting United States v. Southern Constr. Co., 293 F.2d 493, 500 (6th Cir.1961)).

Defendants contend that the present RICO action is a compulsory counterclaim to the earlier filed case because "[t]he actions PlayMaker complains of: (1) arise out of the same transactions or occurrences [that are the] basis of the misappropriation of trade secrets, defamation, false advertising and unfair competition, deceptive trade practices, interference with business relations, and infringement claims in the Atlanta Action; and (2) are against parties already before the Court in Atlanta." (Docket No. 10 at 2). In response, PlayMaker argues that the RICO "claims in this lawsuit were not compulsory counterclaims in the Georgia litigation because (1) Defendants are not an 'opposing party' in the Georgia litigation under Rule 13; (2) PlayMaker's RICO claims do not arise out of the same transaction or occurrence as the claims of the true 'opposing party' in the Georgia litigation, which is HCRM; and (3) Defendants McDaniel and Brown argue extensively that they are not subject to personal jurisdiction in the Georgia litigation, but have conceded that personal jurisdiction is proper in this Court." (Docket No. 18 at 6).

By its very terms, Rule 13(a) only requires that a pleading state a counterclaim against an "opposing party." In support of its position that the RICO claims against Defendants were not compulsory counterclaims in the Atlanta action, PlayMaker relies on HID Global Corp. v. Leighton, 2007 WL 3566705 (N.D. Ohio Nov. 15, 2007), and GIA-GMI, LLC v. Michener, 2007 WL 1655614 (N.D. Ca. June 7, 2007), for the proposition that under Rule 13, an opposing party is a named party who has asserted a claim against a counterclaimant. More specifically on this point, the court in Michener, utilizing language that the court in Leighton found to be "particularly apt," wrote:

> Whatever flaws Rule 13 may have, it at least has the virtue of clarity. The plain meaning of "opposing party" is a party to the lawsuit – that is, a named party who

5

> asserted a claim against the counterclaimants. To accept the expansive definition of this term espoused by defendants would erode the Rule's clarity to the point that litigants would simply have to guess in each individual case whether a court would determine that a potential defendant to a counterclaim is an "opposing party." While other Circuits have carved exceptions to this plain meaning in instances where there was no question that the counterclaim defendant was in all salient legal respects identical to a named party, such is not the case here.

Michener, 2007 WL 1655614, at *4; Leighton, 2007 WL 3566705, at *4.

Cases must be read in context and when so read, PlayMaker's reliance on both Leighton and Michener is misplaced. In Leighton, HID Global sued Mr. Leighton in Ohio for breach of contract and unjust enrichment over security access control cards. Previously, HID had sued Leighton Technologies ("LT") (to which Mr. Leighton had assigned his interest in certain patents) in California, seeking a declaration that the Leighton patents were either not enforceable or were not infringed. In the Ohio action, Mr. Leighton argued that the action was due to be dismissed because the breach-of-contract and unjust-enrichment claims were required to be filed as compulsory counterclaims in the California action. The court disagreed because Mr. Leighton was not an opposing party in the California action, nor was he the functional equivalent of LT, the actual opposing party in that action.

In Michener, GIA-GMI brought an action for fraud, breach of fiduciary duty, and other claims related to a loan it made to GMICC, naming as defendants the former officers and directors of GMICC. Those defendants, in turn, filed a counterclaim for negligent and intentional misrepresentation against Richard Blankenship who was the managing member of GIA-GMI. However, Mr. Blankenship was neither a plaintiff in the action or so closely identified with GIA-GMI that he could be considered its functional equivalent. As a consequence, the counterclaims against Blankenship were dismissed because he was not an "opposing party" within the meaning of

Rule 13(a).

This case is markedly different. PlayMaker filed amended counterclaims (or more properly a Third-Party Complaint) against Defendants Tunnell, Brown, and McDaniel in the Atlanta action, and the Court has little difficulty concluding that they are "opposing parties" in that action. See Schwab v. Erie Lackawanna R. Co., 438 F.2d 62, 66 (3rd Cir. 1971) ("third-party litigants become adverse upon service of the third-party complaint [and] [t]hus they are opposing parties prior to the assertion of the additional claim by the third-party plaintiff, and, indeed, retain that status throughout the case"); Earle M. Jorgensen Co. v. T. I. United States Ltd., 133 F.R.D. 472, 475 (E.D. Pa. 1971) ("'Any party asserting a claim, whether an original claim, counterclaim, cross-claim or third-party claim, becomes an opposing party to the party sued'" and "'[o]pposing parties,' therefore, are parties that formally oppose each other on a pleaded claim, such as plaintiffs and original defendants, or third-party plaintiffs and the third-party defendants they have joined") (citation omitted); 6 Charles Alan Wright *et al.*, FEDERAL PRACTICE AND PROCEDURE § 1404 (3rd ed. West 2010) ("Once a third-party claim has been advanced, the third-party plaintiff and the third-party defendant are opposing parties and a counterclaim may be interposed by the latter").

This does not end the inquiry, however, because Rule 13(a) also has a "transaction or occurrence" component. In this regard, Defendants acknowledge that "for Rule 13's compulsory counterclaim provision to apply, the claims must 'arise out of the same transactions or occurrences.' Fed. R. Civ. P.13(a)." (Docket No. 25 at 7). Defendants then note that the "standard for identity of transactions and occurrences is expansive," that this case and the Atlanta action "mirror each other," with "the pleadings almost match[ing] up in their allegations," that most of "[t]he facts giving rise to this action were in existence at [the] time" the Atlanta action was filed, and that

7

PlayMaker actually alleged many of the same facts in the Atlanta action that it alleges here. (Id. at 7-8).

Defendants' arguments appears sound, insofar as they go. But Rule 13(a)'s "transaction and occurrence" language is very specific: it states a pleading must state as a counterclaim any claim the pleader has against an opposing party if it "arises out of the transaction or occurrence *that is the subject matter of the opposing party's claim*." Fed. R. Civ. P. 13(a)(1)(A) (emphasis added). While present Defendants are the "opposing party" for purposes of the Amended Counterclaims/Third-Party Complaint in the Atlanta action, they have not raised claims against Playmaker in that action; HCRM has.[2]

Defendants argue that the compulsory counterclaim rule aside, this case should be dismissed because "'[w]hen a plaintiff files a second complaint alleging the same cause of action or a prior, pending related action the second complaint may be dismissed,'" (Docket No. 25 at 11) (quoting Oliney v. Garnder, 771 F.2d 856, 859 (5th Cir. 1985)). This case, however, does not present the same cause of action as the Atlanta action.

Defendants also cite Twaddle v. Diem, 200 F. App'x 435, 438 (6th Cir. 2006), for the proposition that "[s]imple dismissal of the action is a common disposition because plaintiffs have no right to maintain two causea of action at the same time." (Docket No. 25 at 11). But the Sixth Circuit in Twaddle also stated that "[i]t is an abuse of discretion . . . to prevent a party from proceeding in a suit that is not truly duplicative." Twaddle, 200 F. App'x at 438. This case is not

---

[2] Defendants specifically disavow any argument that "because of an identity of interest, or a 'functional identity' . . . HCRM and the individual defendants named in this case ought to be considered, in effect, one and the same for purposes of [the] Rule 13 analysis." (Docket No. 25 at 5-6). Thus, the Court does not consider cases like Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 391 (3rd Cir. 2000), that have interpreted Rule 13(a)'s "opposing party" language broad enough to include the "functional equivalent" or the alter ego of the named party.

duplicative of the Atlanta action because there are different legal theories presented and different parties in the two lawsuits.

In short, the Court concludes that while Playmaker and Defendants (with the exception of Karl Dumas) are opposing parties in the Atlanta action, the RICO claims here are not compulsory counterclaims in that action because Defendants do not assert claims against Playmaker in the Atlanta action. The Court also concludes that this case is not duplicative of the Atlanta action.

Having so ruled, the Court notes that this may not be the final word on the subject. "The filing of multiple federal actions arising out of the same facts is strongly discouraged, and plaintiffs take such a course at the peril that the adjudication of one case will have preclusive effect on the other." Id. at 439. Given that the Atlanta action is further along procedurally and likely to be resolved before this case, the possibility exists that res judicata arguments may be made further down the road.

## B. RICO Claims and Distinctness

In the Complaint in this case, PlayMaker claims that Defendants Tunnell, Brown, McDaniel, and Dumas violated and conspired to violate RICO. PlayMaker alleges that HCRM is the "enterprise" for purposes of 18 U.S.C. § 1961(4), and that the individual Defendants are "persons" employed by and associated with HCRM, who conducted and conspired with each other to conduct the affairs of HCRM through a pattern of racketeering, including: (1) wire fraud; (2) identity theft; (3) aggravated identity theft; (4) interstate transmission of stolen property; (5) interstate receipt of stolen property; and (6) witness tampering.

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or

9

participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). "Thus, to state a RICO claim, [a plaintiff] must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Moon v. Harrison Piping Supply, 465 F.3d 719, 723 (6th Cir. 2006) (citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)).

With regard to the "person" and "enterprise" aspects of a RICO claim, the Sixth Circuit has observed:

> A RICO "person" can be either an individual or a corporation. [18 U.S.C.] § 1961(3). A RICO " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Id. § 1961(4). The enterprise itself is not liable for RICO violations; rather, the "persons" who conduct the affairs of the enterprise through a pattern of racketeering activity are liable. United States v. Philip Morris USA, Inc., 566 F.3d 1095, 1111 (D.C. Cir. 2009). To establish liability under § 1962(c), a plaintiff "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001).
>
> This principle is known as the "non-identity" or "distinctness" requirement. Begala v. PNC Bank, Ohio, N.A., 214 F.3d 776, 781 (6th Cir. 2000). "Under RICO, a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise." Id. As we explained in Begala:
>
>> Under the "non-identity" or "distinctness" requirement, a corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members. An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself. Id. If RICO imposed liability on a corporation for the ordinary conduct of its agents and employees, every claim of corporate fraud would automatically become a violation of RICO.

In re ClassicStar Mare Lease Litigation, 727 F.3d 473, 490 (6th Cir. 2013).

In moving to dismiss, Defendants argue that the Complaint violates the distinctness

requirement because the "persons" it names (Defendants who are employees of HCRM) are not distinct from the "enterprise" it names (HCRM). The Court disagrees based upon the Supreme Court's decision in Cedric Kushner. One of "the two important principles" from that case is that "individual defendants are always distinct from corporate enterprises because they are legally distinct entities, even when those individuals own the corporations or act only on their behalf." In re ClassicStar, 727 F.3d at 492; see also Abraham v. Singh, 480 F.3d 351, 357 (5th Cir. 2007) ("Plaintiffs have identified Chandler as the RICO person and Falcon Steel as the RICO enterprise. This allegation is sufficient to demonstrate that the RICO person, an individual employee of the corporation, is distinct from the RICO enterprise, the corporation itself"); United States v. Najjar, 300 F.3d 466, 484 (4th Cir. 2002) ("A certain degree of 'distinctness' is required for RICO liability; however, where a corporate employee 'acting within the scope of his authority . . . conducts the corporation's affairs in a RICO-forbidden way,' the only 'separateness' required is that the corporate owner/employee be a natural person and so legally distinct from the corporation itself") (citation to Kushner Cedric omitted); Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc., 46 F.3d 258, 265-66 (3rd Cir. 1995) (holding that, when officers and employees of a legitimate corporation operate and manage the otherwise legitimate corporation through a pattern of racketeering activity, RICO's distinctness requirement is fulfilled).

**C. Additional Arguments**

Long after the Motion to Dismiss was fully briefed, Defendants, on the eve of oral argument, filed a Notice of Supplemental Authority (Docket No. 58) raising new arguments, some of which were voiced at the hearing. The Court is not required to considered the new arguments, most of which are wholly underdeveloped. See Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir.

2008) (issue are "waived when they are raised for the first time in . . . replies to responses"); Sanborn v. Parker, 629 F.3d 554, 579 (6th Cir. 2010) (observing that the Sixth Circuit has "consistently held . . . that arguments made to us for the first time in a reply brief are waived"). Nevertheless, the Court has considered the supplemental authority and the new arguments raised, but finds nothing that alters the conclusion that dismissal of this action is warranted.

Defendants cite a number of a cases (all of which existed before the Motion to Dismiss was filed) that discuss collateral estoppel, but make no effort to show how those cases are applicable here. Regardless, and as one of the cases Defendants rely upon points out, collateral estoppel only comes into play after "the prior proceedings have resulted in a final judgment on the merits[.]" Georgia-Pacific Consumer Prod. L.P. v. Four-U-Packaging, Inc. 701 F.3d 1093, 1098 (6th Cir. 2012). That has not occurred in the Atlanta action.

Defendants have also cited some cases and proffered arguments about the "first-to-file" rule. That rule, "while not frequently discussed by [the Sixth Circuit], is a 'well-established doctrine that encourages comity among federal courts of equal rank." Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 551 (6th Cir. 2007) (quoting AmSouth Bank v. Dale, 386 F.3d 763, 791 n.8 (6th Cir. 2004)). "'The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment.'" Id. (quoting Zide Sport Shop of Ohio v. Ed Tobergte Assoc., Inc., 16 F. App'x 433, 437 (6th Cir. 2001)). "District courts have the discretion to dispense with the first-to-file rule where equity so demands." Zide Sport Shop, 16 F. App'x at 437.

The first-to-file rule does not mandate dismissal of this action, although it may counsel in favor of letting the Atlanta action proceed to judgment first. Moreover, the rule applies to cases

involving nearly identical parties and issues, but, as noted, there are many dissimilarities between this case and the one pending in Atlanta. HCRM is not a Defendant in this case. but is in the Atlanta case, and the converse is true with respect to Dumas who is a Defendant here, but not in Atlanta. Further, the Atlanta action contains a myriad of claims and counterclaims, none of which is a RICO claim, whereas this case contains only RICO claims and none of the claims alleged in Georgia. Additionally, some 65 paragraphs in the Complaint here are not present in the counterclaims in the Atlanta action.

Finally, Defendants cite a couple of cases for the proposition that for "closed end" continuity, nine to sixteen months will not suffice. However,

> "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . Whether a pattern of racketeering activity satisfies the continuity requirement depends on the particular facts of each case. . . . Continuity may be established at the pleading stage by alleging facts of either closed- or open-ended racketeering activity.

Moon v. Harrison Piping Supply, 465 F.3d 719, 724-25 (6th Cir. 2006) (internal citations omitted).

Here, the Court need not address whether PlayMaker has sufficiently alleged closed-end continuity because it adequately alleges open-ended continuity. PlayMaker alleges that Defendants' racketeering acts "pose a threat of continued criminal activity [which] by its nature projects into the future with a threat of repetition and is part of HCRM's regular way of doing business," (Docket No. 1, Complaint § 149), and sets forth facts which may support the allegation. See Heinrich v. Waiting Angels Adoption Serv., Inc., 668 F.3d 393, 411 (6th Cir. 2012) (plaintiff adequately alleged continuity where "[a]t the time that the defendants committed the four predicate acts alleged . . . , there was no indication that their pattern of behavior would not continue indefinitely into the future).

### III. CONCLUSION

13

On the basis of the foregoing, an appropriate Order will be entered denying Defendants' Motion to Dismiss.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE